SUPERIOR COURT OF NEW JERSEY
COUNTY OF GLOUCESTER
LAW DIVISON

| | |
|---|---|
| Brian F. McBride | ) |
| 86 Goodwin Parkway | ) |
| Sewell, NJ 08080 | )CIVIL ACTION |
| (312) 672-2794 | ) SUMMONS  *COMPLAINT* |
| | ) |
| Plaintiff *pro se* | ) |
| | ) DOCKET NO: |
| v. | ) |
| TOWNSHIP OF WASHINGTON | ) |
| CAPEHART AND SCATCHARD, PA | ) |
| | ) |
| JOSEPH J. MICUCCI | ) |
| in his individual and official capacity | ) |
| | ) |
| ELIZABETH MICUCCI | ) |
| | ) |
| CARMEN SAGINARIO | ) |
| in his individual and official capacity | ) |
| | ) |

**PLAINTIFF'S COMPLAINT FOR OFFICIAL MISCONDUCT, FRAUD, ATTORNEYS AIDING AND ABETTING FRAUD, CIVIL CONSPRIACY, VIOLATIONS OF THE RACKETEER INFLUENCED AND CORRUPT BUSINESS PRACTICES ACT, VIOLATIONS OF THE FIRST AMENDMENT TO THE UNITED STATES CONSTITUTION, VIOLATIONS OF THE FOURTH AMENDMENT TO THE UNITED STATES CONSTITUTION VIOLATIONS, VIOLATIONS OF THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION, VIOLATIONS OF THE  NEW JERSEY CIVIL RIGHTS ACT**

## 1. PARTIES JURISDICTION AND VENUE

1. The Complainant, Brian F. McBride, is a natural person who at all times relevant hereto is a native and current resident of the State of New Jersey. Plaintiff is the current owner of the property that is the subject of this action: 86 Goodwin Parkway Sewell, NJ 08080.

2. Defendant Washington Township is a municipal corporation located in Gloucester County and a political subdivision of New Jersey organized and existing under the laws of the State of New Jersey.

3. Defendant Joseph Micucci is employed by the Defendant as the Zoning Officer and was previously employed as a sworn law enforcement official. His final position as a law enforcement officer for the Township of Washington was at Washington Township High School. Micucci resides in Gloucester County

4. Defendant Capehart and Scatchard, PA, is a New Jersey domiciled corporation engaged in the practice of law that regularly conducts business in Gloucester County

5. Defendant Carmen Saginario is the Conflict Solicitor/Special Counsel appointed by the Township of Washington.

*EXHIBIT "A"*

6. Defendant Elizabeth Lose-Micucci is the wife of Joseph Micucci and resides in Gloucester County.

7. Defendants John Does 1-5, fictitious names not presently known, are adult individuals who were present at or involved in official activities giving rise to the Complaint. At all times relevant hereto, John Does 1-5 were acting on behalf of Defendants Washington Township and/or Carmen Saginario and/or Capehart and Schatchard

8. At all relevant times, Defendants Carmen Saginario, Joseph Micucci, Jr., and John Does 1-5 were acting under color of law and under color of their authority as officers, agents, servants and employees of Defendant Washington Township.

## 2.  CASE SUMMARY

The Plaintiff, Dr. Brian McBride, is one of Washington Township's success stories. He graduated from Washington Township High School in 1996 and subsequently received his Doctorate in Pharmacy from the Philadelphia College of Pharmacy. He then completed a post-doctoral fellowship in Cardiology where he, along with his mentor, led ground breaking research that caused President George W. Bush to order the US Food and Drug Administration to remove ephedra containing dietary supplements from the market. He later established a new genetic mechanism by which drugs can short circuit the cardiac electrical system. A career change and a sick sibling caused the Plaintiff to relocate to Washington Township in 2014.

The factual allegations, dating back to February 2017 are presented herein to provide this Honorable Court with a complete picture of the Defendants' absolutely egregious misconduct leading to this instant action.

Plaintiff was dismayed at the deplorable run down condition of Washington Township and its markedly dysfunctional government. This is a civil rights action brought by the Plaintiff to seek relief for violations by Defendants under color of law of his rights secured by the New Jersey Constitution, the New Jersey Civil Rights Act, N.J.S.A 10:5-1, et seq, the New Jersey Open Public Records Act, and New Jersey Statue prohibiting disclosure of juvenile records.

This action seeks relief from the Defendants sustained and unabated fraud and political oppression at the hands of the Defendants Carmen Saginario and Joseph Micucci which was discovered and/or committed in 2019.

Plaintiff's demand for damages includes compensatory and punitive damages, declaratory relief, and award of attorneys' fees and costs, and such other and further relief as this Court deems proper.

## 3.  FACTUAL ALLEGATIONS:

4. Plaintiff filed a tort claim notice in December 2017 for violation of Plaintiff's civil rights.

5. Despite the filing of the tort claim form, Defendants collective actions continued unabated and intensified to include several of the Defendants' employees and elected officials.

6. The violative conduct has continued, unabated, up to and through the filing of this action.

7. Plaintiff publicly opposed sexual discrimination in the employment practices by the Defendants.

8. Plaintiff publicly opposed the egregious salary increases given to municipal employees after only 30 days of employment.

9. Plaintiff opposed the unmannerly actions of its business administrator Jason Ginger towards Councilwoman Dana Pasqualone in a public council meeting.

10. Plaintiff expressed concern that Gonter may be abusing illegal hormones or anabolic steroids because he displayed gynecomastia, acromegaly, a short temper and balding only about the crown of his head, cardinal symptoms of anabolic steroid and hormone use that could be appreciated by any child passing a ninth grade science course.

11. Plaintiff publicly opposed Defendants' aiding and abetting of school board member Julie Yankanich and her husband Steven disclosing from their shared home internet account the confidential juvenile records of Plaintiff in the custody and control of the Defendant Washington Township's Police Department.
    a. Plaintiff was, as a child, the victim of abuse from his mother. The involvement of the school board, police department, and Department of Children and Families has been used by the Defendants to shame McBride and chill his public participation.

12. Plaintiff publicly opposed conflict solicitor Defendant Capehart and Schatchard representation of the Township of Washington because their employee, Prudence Higbee, served as treasurer of the campaign to elect Mayor Joann Gattinelli

13. Plaintiff stated publicly that Capehart "earned" the Township's business as a reward for Higbee's efforts to have Gattinelli elected
    a. Higbee is also the sister of former elected official and council president Michelle Martin.

14. Plaintiff publicly opposed the continued appointment of Joshua Aronovitch to the municipal committee charged with assisting at risk families because Aronovitch had himself been arrested and charged with driving under the influence of alcohol and had a positive breathalyzer test.

15. Plaintiff publicly criticized the Defendant Township of Washington City Council for appointing Frank Cianci, a toll collector, and local leader of the Democratic Party with absolutely zero utility experience whatsoever as a member of the Board of Trustees to the Municipal Utilities Authority.

16. Plaintiff publicly criticized Dana Pasqualone, council liaison to the Washington Township Board of Education, for not getting an explanation from the Board of Education as to why Frank Cianci's wife is paid more as a lunchroom lady than an Emergency Room resident physician receives for providing life saving services at Jefferson Washington Township Hospital.

17. Plaintiff publicly criticized MUA Chief Financial Officer Elizabeth Rogale for signing her time cards as "present" at the MUA when official minutes show her not at work but sitting on the Gloucester County Board of Taxation and getting paid for same.

18. Plaintiff publicly disclosed that Elizabeth Rogale is the subject of a criminal investigation by Gloucester County Prosecutor Charles Fiore for the aforementioned conduct.

19. Plaintiff found out that Councilwoman Angela Donato was having a motorcycle parade with participation from Defendant Washington Township's Police Department.

20. Plaintiff publicly opposed the parade because it did not ever have a municipal permit.

21. Plaintiff publicly opposed the parade because the taxpayers paid for police department services to benefit a private business.

22. Plaintiff publicly criticized the hiring of Defendant Joseph Micucci because he had no job-relevant credentials to become zoning officer and was being given a consolation prize for losing the mayoral election.

23. Councilwoman Pasqualone considered him intellectually incompetent, stated such while a guest at Plaintiff's own wedding and cited his overt lack of computer literacy.

24. Defendants then went on a coordinated and premeditated attack of Plaintiff for the sole benefit of their political party and/or (in the case of Carmen Saginario) to protect his employer's (Capehart and Schatchard) business with Defendant Township of Washington.

25. To punish Plaintiff for exposing these misdeeds and political rewards Defendant Township of Washington and its "special counsel" Carmen Saginario willingly aided and abetted Defendant Washington Township's pattern and practice of chilling Plaintiff's Civil Rights—a contemporaneous violation of the New Jersey Attorney Rules of Professional Conduct.

26. Plaintiff endured nine citizen issued criminal complaints by or at the behest of Washington Township elected officials.

27. Plaintiff endured two civil lawsuits for slander and libel filed by elected officials before this very Honorable Court in violation of rule 1:4-8.

28. In the civil lawsuits, the adverse parties were asked to provide proof they paid their attorney. They failed to provide proof.

29. In one such instance, said attorney's bills were created after the fact and submitted to the court as authentic when they were not ( a violation of the Rules of Attorney Conduct), which the court then relied upon.

30. Upon information and belief, it is believed that the one or more of Defendants in ***this*** action, paid or caused to be paid the attorney representing these public officials as a part of an orchestrated plan to deny Plaintiff his civil rights.

31. As if the first nine civil and criminal actions were not enough, Plaintiff then endured a lawsuit under the New Jersey Penalty Enforcement Law in which he was charged by Defendant Township of Washington with a pool violation even though Plaintiff abated the condition months before the initiation of the lawsuit.

32. The lawsuit for the pool was only initiated for fraudulent purposes to teach Plaintiff a lesson to not participate in government because the Defendant Township of Washington was identified by Democratic Party Chair Laurie Park Burns as "their family business."
    a. Indeed, Ms. Park-Burns is employed by the County of Gloucester as records custodian.
    b. Christine Park-Cialella is the sister of Ms. Park Burns and is employed as the Clerk of Defendant Township of Washington
    c. Ms. Park-Burn's husband, Scott Burns, is the prosecutor for the Township of Washington.
    d. Ms. Cialella resides one house down from Plaintiff and voting records show she cohabitates with the son of Frank Cianci.

33. The official who issued the "pool violation," John DiStefano, was a beneficiary under the salary increase and therefore should have been conflicted from issuing the violation

34. During the aforementioned "pool lawsuit" heard by Judge Ragonese, Defendant Township of Washington's Attorney Carmen Saginario made oral and written representations on behalf of the Defendant Washington Township that said the "pool lawsuit" was not approved by the mayor or city council— admitting a violation of the Faulkner Act.

35. Saginario also stated on the record that these elected officials had no knowledge of the "pool lawsuit."

36. Judge Ragonese relied on this information when he made his final ruling to dispose of the case.

37. After the "pool lawsuit" was concluded, and prior to his leaving elected office, Councilman Nick Fazzio telephoned the Plaintiff in October 2018 and told him that Plaintiff should "sue the shit out of the town."

38. During this same call Fazzio also stated Saginario did in fact discuss the "pool lawsuit" in executive session with the Mayor and Council.

39. Fazzio stated that in the executive session he opposed Defendant's global conduct towards Plaintiff.

40. Fazzio had followed this with a text message memorializing the phone conversation and included that Councilwoman Angela Donato and Business Administrator Jason Gonter responded to his objections over the repeated lawsuits with "shut the fuck up." (See exhibit A)

41. Exhibit A is a text message sent by Fazzio at 2:02 PM on November 5, 2018, while still an elected official.

42. Communications from a government official to a constituent, including those in electronic form constitute a government record as defined in N.J.S.A. 47:1A.

43. Plaintiff sent a written letter to Judge Ragonese concerning fraud before his court by Saginario, a licensed attorney.

44. Ragonese's staff informed Saginario of ex-parte communication.

45. Fazzio then called Plaintiff irate, claimed that he, Fazzio, was inundated with "hundreds of calls" for having knowingly breached attorney client privilege between Defendants and Plaintiff.

46. Fazzio claimed through his yelling tirade that his business and family were threatened by the unidentified callers.

47. Fazzio refused to tell Plaintiff who called him.

48. Plaintiff remined Fazzio of his November 5, 2018 text message stating that the text message was a government record and therefore admissible as evidence in a civil trial and that his e-mail caused the Township to waive attorney client privilege, notwithstanding the crime-fraud exception to attorney client privilege.

49. Plaintiff told Fazzio it had to start with Defendant Saginario as he, Saginario, was the only one representing the Defendant Township of Washington to receive Ragonese's letter.

50. Fazzio then threatened Plaintiff with a frivolous lawsuit stating "I'll find some reason."

51. The case against Plaintiff brought by Angela Donato was dismissed in January 2019 in Plaintiff McBride's favor on the grounds that Donato is a public official.

52. Plaintiff thought he could return to public participation without any harassment from the municipality or its employees.

53. In June 2019, Plaintiff joined a community forum entitled "Washington Township Talk" hosted by Facebook, Inc. on their internet platform.

54. Plaintiff participated in the discussion of a fellow neighbor who could not get permits for her pool or any credible information from the Zoning Officer, Micucci.

55. Plaintiff shared his experience and advised the neighbor to follow the Uniform Construction Code and Municipal Code strictly.

56. Plaintiff even provided a web link to the Defendant's Municipal Code for Swimming Pools

57. Defendant Micucci replied and stated the Plaintiff had an illegal pool

58. Court and mediation records show Plaintiff did not have an illegal pool.

59. Construction official John DiStefano stated during mediation that he never measured the pool for length, height of barrier walls, presence of a removable ladder, or even if there was water in the pool.

60. Defendant Micucci, in the same Facebook post, referenced Plaintiff having been involved with the Defendant's Police Department as a youth.

61. Defendant Joseph Micucci falsely claimed that Plaintiff "knows nothing." (Exhibit B)

62. Defendant Elizabeth Micucci falsely stated on the same platform that Plaintiff was reporting everyone for violations when official government records, including email sent by Plaintiff to Defendant Joseph Micucci show Plaintiff only turned in violations of elected officials and employees loyal to the Washington Township Democratic Executive Committee.

63. Joseph Micucci was one of the Officers who responded to Plaintiff's childhood home and he does have intimate knowledge of who was involved.

64. Plaintiff immediately brought his illegal disclosure to the attention of the public and to the Defendants.

65. Joseph Micucci is conducting government business over Facebook using his own account and that of his wife.

66. Defendants refused to allow Plaintiff access to Micucci's Facebook pursuant to a lawful Open Public Records Act Request and Common Law Right of Access.

67. Defendant Township of Washington called the police to respond to the municipal building when Plaintiff went to speak with Joseph Micucci and Human Resources official Janine Smiley

68. Plaintiff recorded his visit to prove he acted in a lawful behaved manner.

69. Defendants refused to terminate Joseph Micucci for cause.

70. By virtue of Joseph Micucci having been the de facto head of school security for the Washington Township High School, and a Police career spanning more than two decades, he has access and knowledge of literally thousands of confidential juvenile cases that he has now proven that he will use for political gain.

71. Defendant Washington Township was negligent in its supervision of Defendant Joseph Micucci.

72. Defendant Washington Township aided and abetted Joseph Micucci's willful misconduct

73. Defendants pattern and course of retaliatory conduct, ostensibly at the behest of Democrats in power has, not stopped.

74. Defendants have not stopped subjecting Plaintiff to Nazi-like political oppression.

75. Plaintiff is undergoing medical treatment for his injuries as a result of this conduct and the slanderous information posted about him.


## COUNT I:
## FRAUD: AN INTENTIONAL TORT OR IN THE ALTERNATIVE A NEGLIGENT TORT
### (McBride versus all Defendants)


8. Plaintiffs repeat and re-allege each and every allegation of the foregoing paragraphs as if fully set forth herein

9. Negligence is the failure to do something which a reasonably careful person would do or the doing of something which a reasonably careful person would not do under similar circumstances. (Williams v. Conner 228 Ill App 3d 350, 364 (5th district))

   a. As an attorney Defendant Saginario a duty to be honest in their representations. Saginario lied to Judge Samuel Ragnoese while representing the Defendant Township of Washington in Township of Washington v. Brian F. McBride)

   b. As a government employee, Defendant Micucci had a duty to keep juvenile records he accessed as a police officer confidential and failed to do so.

   c. Injuries or damages were sustained by the Plaintiff

   d. Defendants breech of duty was the proximate cause for Plaintiff's damages and excess attorney fees

10. In the State of New Jersey, the Rules of Professional Conduct clearly and unequivocally outlines the duties of an attorney as an officer of the Court.

11. In the State of New Jersey, NJSA 2A:4A-60 prohibits the disclosure of juvenile records

12. As to Defendant Saginario, the commission of a fraudulent act, is governed by rules of professional conduct:

   a. Such that a lawyer shall not commit an act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer.

13. Moreover, Witt, 583 N.E.2d 526 (1991) establishes fraud as including anything calculated to deceive, whether it be a single act of combination of circumstances.

14. Yamaguchi (Yamaguchi, 515 N.E.2d 1235, 1239 (Ill. 1987)) further defines fraud as "whether it be the suppression of truth or the suggestion of what is false,"

15. Armentrout (Armentrout, 457 N.E.2d 1262, 1266 (Ill. 1983)) broadens the definition of fraud: "whether it be by direct falsehood or by innuendo, by speech or by silence, by word of mouth or by look or gesture."

16. The basic elements of fraud and deceit are described in (Banco Popular N. Am. v. Gandi, 184 N.J. 161, 172-73 (2005) (quoting Gennari v. Weichert Co. Realtors, 148 N.J. 582, 610 (1997)))

   a. a false representation of material fact

   b. the defendant must know of the falsity, but nevertheless, makes the statement for the purpose of inducing the plaintiff to rely on it;

   c. the plaintiff must justifiably rely on the statement for the purpose of inducing the plaintiff to rely on it; and

      i. the plaintiff must have suffered damages as a consequence.

17. *Wolf v. Liberis,* 153 Ill.App.3d 488, 496, 106 Ill.Dec. 411, 505 N.E.2d 1202 (1987) establishes the concept for aiding and abetting an act for which the Plaintiff is entitled to legal redress:

   a. The party whom the defendant aids must perform a wrongful act which causes an injury;

   b. The defendant must be regularly aware of his role as part of the overall or tortious activity at the time that he provides the assistance;

   c. The defendant must knowingly and substantially assist the principal violation.

18. In *Reuben H. Donnelley Corp. v. Brauer,* 275 Ill.App.3d 300, 211 Ill.Dec. 779, 655 N.E.2d 1162 (1995), Illinois courts established the precedent that action against attorney or legal practice for fraud could be considered.

19. In *Brauer,* 275 Ill. App.3d at 310, 211 Ill.Dec. 779, 655 N.E.2d 1162, the court affirmed that a case for fraud may be brought before the court as a tort, but not for breech of contract, which clearly is applicable in this action before this Honorable Court.

20. Moreover, *Bosak v. McDonough,*192 Ill.App.3d 799, 804-05, 139 Ill.Dec. 917, 549 N.E.2d 643 (1989) and *Celano v. Frederick,*54 Ill.App.2d 393, 400, 203 N.E.2d 774 (1964), quoting *Wahlgren v. Bausch & Lomb Optical Co.,*68 F.2d 660, 664 (7th Cir.1934) held that policies for preventing a conspiracy should apply to attorneys with regard to committing an act which is civilly or criminally actionable.

## COUNT II:
## CIVIL LIABILITY FOR OFFICIAL MISCONDUCT
### (McBride vs. Joseph Micucci and/or Sagniario)

21. Plaintiffs repeat and re-allege each and every allegation of the foregoing paragraphs as if fully set forth herein

22. Under NJSA 2C:30-2 A public servant is guilty of official misconduct when, with purpose to obtain a benefit for himself or another or to injure or to deprive another of a benefit:

    a.   He commits an act relating to his office but constituting an unauthorized exercise of his official functions, knowing that such act is unauthorized or he is committing such act in an unauthorized manner; or

    b.   He knowingly refrains from performing a duty which is imposed upon him by law or is clearly inherent in the nature of his office.

23. THE VALUE DEPREIVED OF PLAINTIFF MCBRIDE IS IN EXCESS OF $15,000 in legal fees

## COUNT III:
## VIOLATIONS OF THE RACKETEER INFLUENCED AND CORRUPT
## ORGANIZATIONS (RICO) ACT, MAIL/WIRE FRAUD
## AND OBSTRUCTION OF JUSTICE
### (McBride vs. All Defendants)

24. For any Racketeer Influenced and Corrupt Organization case, it is important to distinguish between legitimate organizations, businesses, and even government offices and the abuse of those entities for illegal purposes by the unofficial, corrupt "enterprise."

25. This pattern of illegal activities committed by the Defendants, were done with the purpose of financial gain, political retribution, and chilling public participation

26. By the acts alleged herein, Defendants, each and every one of them, jointly and severally, have aided and abetted and conspired to violate the very First Amendment of the United States Constitution they took an oath to uphold diligently.

27. The law presumes generally that a person intends the obvious results of their actions.

28. Defendants could be charged and convicted of multiple, related violations of law which form a pattern and which violations are each potentially punishable by more than one year in jail constituting concealment, removal, or destructions – or attempts to do so – of public records.

29. 18 U.S. Code § 2071 requires: (a) Whoever willfully and unlawfully conceals, removes, mutilates, obliterates, or destroys, or attempts to do so, or, with intent to do so takes and carries away any record, proceeding, map, book, paper, document, or other thing, filed or deposited with any clerk or officer of any court of the United States, or in any public

office, or with any judicial or public officer of the United States, shall be fined under this title or imprisoned not more than three years, or both. (b) Whoever, having the custody of any such record, proceeding, map, book, document, paper, or other thing, willfully and unlawfully conceals, removes, mutilates, obliterates, falsifies, or destroys the same, shall be fined under this title or imprisoned not more than three years, or both; and shall forfeit his office and be disqualified from holding any office under the United States. As used in this subsection, the term "office" does not include the office held by any person as a retired officer of the Armed Forces of the United States.

30. The Defendants could be charged and convicted of multiple, related violations of law which form a pattern and practice and which violations are each potentially punishable by more than one year in jail constituting mail fraud.

31. Defendants acted in criminal violation of the federal mail fraud statute under 18 U.S.C. § 1341. 18 U.S.C. § 1341 provides: a. Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, or to sell, dispose of, loan, exchange, alter, give away, distribute, supply, or furnish or procure for unlawful use any counterfeit or spurious coin, obligation, security, or other article, or anything represented to be or intimated or held out to be such counterfeit or spurious article, for the purpose of executing such scheme or artifice or attempting so to do, places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service, or deposits or causes to be deposited any matter or thing whatever to be sent or delivered by any private or commercial interstate carrier, or takes or receives therefrom, any such matter or thing, or knowingly causes to be delivered by mail or such carrier according to the direction thereon, or at the place at which it is directed to be delivered by the person to whom it is addressed, any such matter or thing, shall be fined under this title or imprisoned not more than 20 years, or both. If the violation occurs in relation to, or involving any benefit authorized, transported, transmitted, transferred, disbursed, or paid in connection with, a presidentially declared major disaster or emergency (as those terms are defined in section 102 of the Robert T. Stafford Disaster Relief and Emergency Assistance Act (42 U.S.C. 5122)) or affects a financial institution, such person shall be fined not more than $1,000,000 or imprisoned not more han 30 years, or both.

32. Defendants devised or intended to devise a scheme or artifice meant to defraud and/or for obtain money or property from PLAINTIFF for the benefit of the Gloucester County Democratic Party.

33. Defendants utilized false or fraudulent pretenses, representations, and/or promises in order to defraud and/or obtain money from PLAINTIFF for the benefit of the Gloucester County Democratic Party

34. Violation of 18 U.S.C. § 1341 is felony punishable by 30 years of imprisonment and a fine of $1,000,000 USD.

35. The Defendants could be charged and convicted of multiple, related violations of law which form a pattern and practice and which violations are each potentially punishable by more than one year in jail constituting wire fraud.

36. Defendants further acted in criminal violation of the federal wire fraud statute under 18 U.S.C. 1343. 18 U.S.C. § 1343 provides: a. Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign

commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined under this title or imprisoned not more than 20 years, or both. If the violation occurs in relation to, or involving any benefit authorized, transported, transmitted, transferred, disbursed, or paid in connection with, a presidentially declared major disaster or emergency (as those terms are defined in section 102 of the Robert T. Stafford Disaster Relief and Emergency Assistance Act (42 U.S.C. 5122)), or affects a financial institution, such person shall be fined not more than $1,000,000 or imprisoned not more than 30 years, or both.

37. Defendants devised or intended to devise a scheme or artifice meant to defraud and/or for obtain money or property from PLAINTIFF for the benefit of the Gloucester County Democratic Party.

38. Defendants utilized false or fraudulent pretenses, representations, and/or promises in order to defraud and/or obtain money from PLAINTIFF for the benefit of the Gloucester County Democratic Party

39. Defendants transmitted or caused to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice when they transmitted telephone and cellular telephone calls, documents, facsimiles, emails, instant messages, and any other form of communication.

## COUNT IV:
## ACQUISITION AND MAINTENANCE OF AN INTEREST IN AND CONTROL OF AN ENTERPRISE ENGAGED IN A PATTERN OF RACKETEERING ACTIVITY: 18 U.S.C. §§ 1961(5), 1962(B) BY ALL DEFENDANTS

40. Plaintiffs repeat and re-allege each and every allegation of the foregoing paragraphs as if fully set forth herein.

41. During the ten (2) calendar years preceding September 2, 2018, all Defendants did cooperate jointly and severally in the commission of two (2) or more of the RICO predicate acts that are itemized in the RICO laws at 18 U.S.C. §§ 1961(1)(A) and (B), and did so in violation of the RICO law at 18 U.S.C. § 1962(b) (prohibited activities).

42. Defendants operate as an "enterprise" within the meaning of RICO, the activities of which effect interstate and foreign commerce.

43. By virtue of the predicate acts described in this Complaint, including without limitations: laundering of monetary instruments, engaging in monetary transactions improperly derived from unlawful activity, Defendants transferred, received, furthered and supplied financing and income that was derived, both directly and indirectly, from a pattern of racketeering activity in which each of them participated as a principal and used and invested, both directly and indirectly, such income and the proceeds of such income, in establishing, operating and furthering terrorist and other illegal enterprises in violation of 18 U.S.C. § 1962(a).

44. As a direct and proximate result of Defendants' violation of 18 U.S.C. § 1962(a), Plaintiff suffered the loss of valuable property, financial services and support, and suffered other business and pecuniary damages.

45. Plaintiffs further allege that all Defendants did commit two (2) or more of the offenses itemized above in a manner which they calculated and premeditated intentionally to threaten continuity, i.e. a continuing threat of their respective racketeering activities, also in violation of the RICO law at 18 U.S.C. § 1962(b) supra. 223. 18 U.S.C. § 1964(c) defines "racketeering activity" as follows: (1) "racketeering activity" means

a.   any act or threat involving murder, kidnapping, gambling, arson, robbery, bribery, extortion, dealing in obscene matter, or dealing in a controlled substance or listed chemical (as defined in section 102 of the Controlled Substances Act), which is chargeable

b.   any act which is indictable under any of the following provisions of title 18, United States Code: Section 201 (relating to bribery), section 224 (relating to sports bribery), sections 471, 472, and 473 (relating to counterfeiting), section 659 (relating to theft from interstate shipment) if the act indictable under section 659 is felonious, section 664 (relating to embezzlement from pension and welfare funds), sections 891–894 (relating to extortionate credit transactions), section 1028 (relating to fraud and related activity in connection with identification documents), section 1029 (relating to fraud and related activity in connection with access devices), section 1084 (relating to the transmission of gambling information), section 1341 (relating to mail fraud), section 1343 (relating to wire fraud), section 1344 (relating to financial institution fraud), section 1351 (relating to fraud in foreign labor contracting), section 1425 (relating to the procurement of citizenship or nationalization unlawfully), section 1426 (relating to the reproduction of naturalization or citizenship papers), section 1427 (relating to the sale of naturalization or citizenship papers), sections 1461–1465 (relating to obscene matter), section 1503 (relating to obstruction of justice), section 1510 (relating to obstruction of criminal investigations), section 1511 (relating to the obstruction of State or local law enforcement), section 1512 (relating to tampering with a witness, victim, or an informant), section 1513 (relating to retaliating against a witness, victim, or an informant), section 1542 (relating to false statement in application and use of passport), section 1543 (relating to forgery or false use of passport), section 1544 (relating to misuse of passport), section 1546 (relating to fraud and misuse of visas, permits, and other documents), sections 1581–1592 (relating to peonage, slavery, and trafficking in persons)., [1] section 1951 (relating to interference with commerce, robbery, or extortion), section 1952 (relating to racketeering), section 1953 (relating to interstate transportation of wagering paraphernalia), section 1954 (relating to unlawful welfare fund payments), section 1955 (relating to the prohibition of illegal gambling businesses), section 1956 (relating to the laundering of monetary instruments), section 1957 (relating to engaging in monetary transactions in property derived from specified unlawful activity), section 1958 (relating to use of interstate commerce facilities in the commission of murder-for hire), section 1960 (relating to illegal money transmitters), sections 2251, 2251A, 2252, and 2260 (relating to sexual exploitation of children), sections 2312 and 2313 (relating to interstate transportation of stolen motor vehicles), sections 2314 and 2315 (relating to interstate transportation of stolen property), section 2318 (relating to trafficking in counterfeit labels for phonorecords, computer programs or computer program documentation or packaging and copies of motion pictures or other audiovisual works), section 2319 (relating to criminal infringement of a copyright), section 2319A (relating to unauthorized fixation of and trafficking in sound recordings and music videos of live musical performances), section 2320 (relating to trafficking in goods or services bearing counterfeit marks), section 2321 (relating to trafficking in certain motor vehicles or motor vehicle parts), sections 2341–2346 (relating to trafficking in contraband cigarettes), sections 2421–24 (relating to white slave traffic), sections 175–178 (relating to biological weapons), sections 229– 229F (relating to chemical weapons), section 831 (relating to nuclear

materials), (C) any act which is indictable under title 29, United States Code, section 186 (dealing with restrictions on payments and loans to labor organizations) or section 501 (c) (relating to embezzlement from union funds), (D) any offense involving fraud connected with a case under title 11 (except a case under section 157 of this title), fraud in the sale of securities, or the felonious manufacture, importation, receiving, concealment, buying, selling, or otherwise dealing in a controlled substance or listed chemical (as defined in section 102 of the Controlled Substances Act), punishable under any law of the United States, (E) any act which is indictable under the Currency and Foreign Transactions Reporting Act, (F) any act which is indictable under the Immigration and Nationality Act, section 274 (relating to bringing in and harboring certain aliens), section 277 (relating to aiding or assisting certain aliens to enter the United States), or section 278 (relating to importation of alien for immoral purpose) if the act indictable under such section of such Act was committed for the purpose of financial gain, or (G) any act that is indictable under any provision listed in section 2332b (g)(5)(B); 224. Plaintiff demands that judgment be entered against Defendants, each and every one of them, jointly and severally, including an award of trebled damages as consistent with 18 U.S.C. § 1964(c), compensatory and actual damages, reasonable attorneys' fees, pre-judgment interest, post-interest, costs, and an award that this Court deems just and proper.

## COUNT V:
### CONDUCT AND PARTICIPATION IN A RICO ENTERPRISE THROUGH A PATTERN OF RACKETEERING ACTIVITY: 18 U.S.C. §§ 1961(5), 1962(C)  BY ALL DEFENDANTS

46. Plaintiff repeats and re-alleges each and every allegation of the foregoing paragraphs as if fully set forth herein, and specifically repeat and re-allege the allegations under the Second Cause of Action concerning RICO liability.

47. All Defendants did associate with a RICO enterprise of individuals who were associated in fact and who engaged in, and whose activities did affect, interstate and foreign commerce.

48. Likewise, all Defendants did conduct and/or participate, either directly or indirectly, in the conduct of the affairs of said RICO enterprise through a pattern of racketeering activity, all in violation of 18 U.S.C. §§ 1961(4), (5), (9), and 1962(c).

49. During the four (4) calendar years preceding September 2, 2018, all Defendants did cooperate jointly and severally in the commission of two (2) or more of the RICO predicate acts that are itemized in the RICO laws at 18 U.S.C. §§ 1961(1)(A) and (B), and did so in violation of the RICO law at 18 U.S.C. § 1962(c) (prohibited activities).

50. Plaintiff further alleges that all Defendants did commit two (2) or more of the offenses itemized above in a manner which they calculated and premeditated intentionally to threaten continuity, i.e. a continuing threat of their respective racketeering activities, also in violation of the RICO law at 18 U.S.C. § 1962(c) supra Plaintiff demands that judgment be entered against Defendants, each and every one of them, jointly and severally, including an award of trebled damages as consistent with 18 U.S.C. § 1964(c),

compensatory and actual damages, reasonable attorneys' fees, pre-judgment interest, post-interest, costs, and an award that this Court deems just and proper.

## COUNT VI:
## CONSPIRACY TO ENGAGE IN A PATTERN OF RACKETEERING ACTIVITY: 18 U.S.C. §§ 1961(5), 1962(D) BY ALL DEFENDANTS

51. Plaintiffs repeat and re-allege each and every allegation of the foregoing paragraphs as if fully set forth herein, and specifically repeat and re-allege the allegations under the Second Cause of Action concerning RICO liability.

52.  All Defendants did conspire to acquire and maintain an interest in a RICO enterprise engaged in a pattern of racketeering activity, in violation of 18 U.S.C. §§ 1962(b) and (d). 233. During the four (4) calendar years preceding September 2, 2018 all Defendants did cooperate jointly and severally in the commission of two (2) or more of the predicate acts that are itemized at 18 U.S.C. §§ 1961(1)(A) and (B), in violation of 18 U.S.C. § 1962(d).

53. Plaintiffs further allege that all Defendants did commit two (2) or more of the offenses itemized above in a manner which they calculated and premeditated intentionally to threaten continuity, i.e. a continuing threat of their respective racketeering activities, also in violation of 18 U.S.C. § 1962(d) (prohibited activities). 235. Plaintiff demands that judgment be entered against Defendants, each and every one of them, jointly and severally, including an award of trebled damages as consistent with 18 U.S.C. § 1964(c), compensatory and actual damages, reasonable attorneys' fees, pre-judgment interest, post-interest, costs, and an award that this Court deems just and proper.

## COUNT VII:
## FIRST AMENDMENT VIOLATION: AN INTENTIONAL TORT BY ALL DEFENDANTS

54. Defendants, acting in their official capacity and personally, abridge and violated Plaintiff's First Amendment right of freedom of speech and association by significantly disallowing the public and Plaintiff discord to discuss what the Defendants have done and will do with regard to the performance of the Donato family as public figures.

55. These violations are compensable under Bivens v. VI Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971).

56. By reason of the wrongful conduct of the Defendants, each and every one of them, jointly and severally, Plaintiff has suffered harm in the form of having his First Amendment rights violated, his business and property rights have been violated, and his and his freedom of speech and association have been severely comprised, guaranteed to Plaintiff under the U.S. Constitution.

57. As a direct and proximate result of the intentional and willful actions of Defendants, each and every one of them, jointly and severally, in their individual and official capacities, Plaintiff demands judgment be entered against the Defendants, including an award of compensatory and actual damages, punitive damages, equitable relief, reasonable attorneys' fees, pre-judgment interest, post-interest and costs, and an award in an amount to be determined by this Court. Plaintiff demands declaratory and injunctive and other equitable relief against all of Defendants to cease their illegal acts.

## COUNT VII: CIVIL CONSPIRACY
## BY ALL DEFENDANTS

58. Defendants intentionally, knowingly, and maliciously combined it entered into a common design, plan, and agreement to:
   a) Abuse legal process to the harm and injury of plaintiff
   b) Burden Plaintiff in his defense of one or more pending legal matters
   c) Damage Plaintiff financially
   d) Defame Plaintiff and cause damage to his reputation
   e) Silencer hot plaintive in his participation and commentary on matters of local politics within the Township of Washington
   f) Restrain and retaliate against plaintiff for the exercise of his rights to free speech and free association under the federal and New Jersey constitutions
   g) Restrain and retaliate against plaintiff for furthering opposition to actions taken by the governing body of the Township of Washington
   h) Punish and retaliate against plaintiff for criticizing policies of the Township of Washington and the discourtesy of one or more of its employees in public
   i) Further one or more other illicit and/or improper purpose is to the harm and injury of the plaintiff

## COUNT IX:
## CIVIL LIBILITY FOR VIOLATIONS OF NJSA 2A:4A-60
### (McBride v. All defendants except Elizabeth Micucci)

59. NJSA 2A:4A-60 prohibits disclosure of juvenile records in whole or in part:
   a. Social, medical, psychological, legal and other records of the court and probation division, and records of law enforcement agencies, pertaining to juveniles charged as a delinquent or found to be part of a juvenile-family crisis, shall be strictly safeguarded from public inspection.   Such records shall be made available only to:
      i.   (1)  Any court or probation division;
      ii.  (2)  The Attorney General or county prosecutor;
      iii. (3)  The parents or guardian and to the attorney of the juvenile;
      iv.  (4)  The Department of Human Services or Department of Children and Families, if providing care or custody of the juvenile;
      v.   (5)  Any institution or facility to which the juvenile is currently committed or in which the juvenile is placed;
      vi.  (6)  Any person or agency interested in a case or in the work of the agency keeping the records, by order of the court for good cause shown, except that information concerning adjudications of delinquency, records of custodial confinement, payments owed on assessments imposed pursuant to section 2 of P.L.1979, c. 396 ( C.2C:43-3.1 ) or restitution ordered following conviction of a crime or adjudication of delinquency, and the juvenile's financial resources, shall be made available upon request to the Victims of Crime Compensation Agency established pursuant to section 2 of P.L.2007, c. 95 ( C.52:4B-3.2 ), which shall keep such information and records confidential

60. Joseph Micucci did, in fact disclose McBride's juvenile records, part of a family crisis, on a publicly available Facebook group with over 5,000 people, which violates the statue.

61. NJSA 2A:4A-60 labels Joseph Micucci's actions as a disorderly persons offense for which the victim is entitled to restitution

   a.  NJSA 2A:4A-60 states: *Whoever, except as provided by law, knowingly discloses, publishes, receives, or makes use of or knowingly permits the unauthorized use of information concerning a particular juvenile derived from records listed in subsection a. or acquired in the course of court proceedings, probation, or police duties, shall, upon conviction thereof, be guilty of a disorderly persons offense*

   b.  NJSA 2C:18-6 permits this court to award restitution to the Plaintiff.,

      i.  *The provisions of N.J.S. 2C:43-3 to the contrary notwithstanding, in addition to any other sentence which the court may impose, a person convicted of an offense under this act shall be sentenced to make restitution, and to pay a fine of not less than $500.00 if the offense is a crime of the third degree; to pay a fine of not less than $200.00 if the offense is a crime of the fourth degree; and to pay a fine of not less than $100.00 when the conviction is of a disorderly persons offense*

## COUNT XI:
## NEW JERSEY CIVIL RIGHTS ACT N.J.S.A. 10:5-1, ET SEQ. - VIOLATION OF RIGHT TO FREE SPEECH
## (MCBRIDE V. ALL DEFENDANTS)

62. The preceding paragraphs are incorporated herein as though fully set forth at length.

63. At all times pertinent hereto, Plaintiff's public comments and the act of raising his/her hand constituted protected speech in a public forum and, therefore, is an expressive activity entitled to the highest degree of protection under the New Jersey Constitution.

64. At all times pertinent hereto, Defendant Saginario as the Conflict Solicitor and Defendant Joseph J. Micucci of Washington Township, were acting under color of law.

65. At all times pertinent hereto, aforesaid Defendants Joseph J. Micucci, Elizabeth Micucci and John Does 1-5 were acting under color of state law.

66. At all times pertinent hereto, Defendants Saginario, Micuccis, and John Does 1-5 violated Plaintiff's rights guaranteed by the New Jersey Constitution by interfering with Plaintiff's protected speech and filing criminal charges against Plaintiff.

67. The actions of the Defendants aforementioned constitute a violation of law, a violation of Plaintiff's civil rights and deprivation of Plaintiffs' constitutional rights protected by the New Jersey Constitution.

68. At all times pertinent hereto, the conduct of the Defendants aforementioned was intended to interfere with Plaintiff's right to free speech and free association and the privileges and immunities secured to Plaintiff by statute and under the New Jersey Constitution.

69. There is no rational or legitimate basis for said Defendants' conduct as complained of herein.

70. At all times pertinent hereto, the conduct of the said Defendants as complained of herein was motivated by ill will, maliciousness and unlawful purposes.

71. At all times pertinent hereto, Defendants' conduct as complained of herein were willful, deliberate, wanton, malicious, and/or were made in reckless disregard of Plaintiff's civil rights, and Plaintiff is entitled to receive an award of punitive damages.

72. As a direct and proximate result of the Defendants' actions as complained of herein, Plaintiff has suffered and will continue to suffer emotional distress, humiliation and

embarrassment and has incurred and will continue to incur attorneys' fees and costs in defending against the Defendants' unconstitutional and unlawful acts.

## COUNT XII:
## NEW JERSEY CIVIL RIGHTS ACT N.J.S.A. 10:5-1, ET SEQ- VIOLATION OF RIGHT TO FREE ASSOCIATION
### (McBride versus all Defendants)

73. The preceding paragraphs are incorporated herein as though fully set forth at length.

74. At all times pertinent hereto, Defendant Washington Township was a public agency.

75. At all times pertinent hereto, Plaintiff was engaged in constitutionally protected conduct as a member of the Republican Club of Washington Township.

76. At all times pertinent hereto, Plaintiff's affiliation with the Republican Club of Washington Township was known to Defendant Washington Township.

77. At all times pertinent hereto and on or about April 11, 2018, Plaintiff was engaged in constitutionally-protected conduct when he exercised his/her first amendment rights to free speech and expression guaranteed under the New Jersey Constitution.

78. At all times pertinent hereto, Plaintiff's constitutionally-protected conduct was known to Defendant Platt.

79. At all times pertinent hereto, Plaintiff's constitutionally-protected conduct was a substantial or motivating factor in Defendant Platt's decision to pursue criminal charges against the minor Plaintiff.

80. At all times pertinent hereto, Defendant Platt's decision to and actions in pursing criminal charges against Plaintiff, a minor, was politically motivated.

81. At all times pertinent hereto, as Solicitor of Washington Township all of Defendant Platt's actions against Plaintiff as complained of herein were taken under color of state law.

82. At all times pertinent hereto, Defendant Platt violated Plaintiff's rights as guaranteed by the New Jersey Constitution by pursuing criminal charges against the minor Plaintiff based upon political motivation.

83. At all times pertinent hereto, Defendant Platt's actions were taken in deliberate indifference to Plaintiff's well-established rights under the law.

84. At all times pertinent hereto, Defendant Platt knew or should have known pursuing criminal charges against Plaintiff, a minor, based upon Plaintiff's political affiliation was

85. unlawful and Platt's actions were not reasonable under the law as established at the time he took said actions.

86. There is no rational or legitimate basis Defendants' conduct as complained of herein.

87. At all times pertinent hereto, the conduct of the aforesaid Defendants as complained of herein was motivated by ill will, maliciousness and unlawful purposes.

88. At all times pertinent hereto, Defendants' actions as complained of here were willful, deliberate, wanton, malicious and/or were made in reckless disregard of Plaintiff's civil rights, and Plaintiff is entitled to receive an award of punitive damages.

89. As a direct and proximate result of the Defendants' actions as complained of herein, Plaintiff has suffered and will continue to suffer emotional distress, humiliation and embarrassment and has incurred and will continue to incur attorneys' fees and costs in defending against the Defendants' unconstitutional and unlawful acts.

## COUNT XIII:
## VIOLATION OF THE NEW JERSEY OPEN PUBLIC RECORDS ACT N.J.S.A. 47:1A-1 OR, IN THE ALTERNATIVE, COMMON LAW RIGHT OF ACCESS

**(McBride versus Township of Washington)**

90. Plaintiff showed that Joseph J. Micucci was using non-secure social media platforms to conduct official business.

91. Plaintiff filed a request for the entire contents of Joseph Micucci's Facebook account with Christine Cialella.

92. A government record is defined as **any** paper, written or printed book, document, drawing, map, plan, photograph, microfilm, data processed or image processed document, **information stored or maintained electronically** or by sound-recording or in a similar device, or an copy thereof, that has been made, maintained or kept on file…or that has been received **in the course of his or its official business.**

93. The Defendant Township of Washington failed to respond within 7 business days as per statue.

## COUNT XIV:
## DEFAMATION PER SE
### (McBride versus Elizabeth and Joseph Micucci)

94. The false statements made by the Defendants Micucci and Micucci were knowingly published to the internet. The defendants knew of the falsity of their statements at the time they were posted.

95. The statements specifically attack Plaintiff's intelligence because Defendant Joseph Micucci said Plaintiff knows nothing, when in fact he has a Doctorate in Pharmacy, completed two fellowships at prestigious academic medical centers, and knows how to file a lawsuit against a Defendant, Joseph Micucci who, according to Councilwoman Pasqualone, was ridiculed by Mayor Gattinelli herself for being the village idiot.

96. Statements were made by both Defendants Micucci expressly about Plaintiff.

97. All statements are entirely false as they pertain to the Plaintiff and expose Plaintiff to ridicule, hatred, contempt, and obloquy.

98. Defendants Micucci failed to sue reasonable care when they published false information.

99. The Defendants Micucci acted with the intent to oppress and/or fraud, entitling Plaintiff to punitive damages.

## REQUEST FOR RELIEF:

1. Joint and severable liability for the payment of $250,000,000 for willful violation of New Jersey Civil Rights Act N.J.S.A. 10:5-1, et seq.

2. Compensatory Damages for Defendants, with jointl and severable liability, disclosure of Plaintiff's Juvenile history pursuant to NJSA 2A:4A-60 in the amount of $250,000,000

3. Termination of Zoning Officer Joseph Micucci, for cause, for violating NJSA 2A:4A-60

4. Revocation/Termination of the pension of Joseph Micucci earned from his employment as a police officer for having violated NJSA 2A:4A-60

5. A complete fully transferable abatement of all property taxes on Plaintiff's Primary Residence for the next 50 years.

6. Appointment of New Jersey state monitor to review the conduct Township of Washington for a period not less than 5 years.
7. Termination of Carmen Saginario and Capehart and Schatchard as solicitors for the Defendant Township of Washington.
8. Bar Defendant Saginario from serving as legal counsel of any municipal government in Gloucester County for a period not less than five years.
9. Order Carmen Saginario to surrender his law license for a period of 12 months.

Respectfully submitted,

Date: 7/19/2019
Pro se Complianant
86 Goodwin Parkway
Sewell, NJ 08080
(312) 672-2794 bfmcbride@icloud.com

*Exhibit A*
*Text message from Nick Fazzio to Brian McBride*

GLO-L-000'   '-19   07/15/2019   Pg 20 of 31   Trans ID:   'V20191249375



·ıl Sprint 🛜  **10:29 PM**  ↗ ⏰ 60% ▪️

‹

Nick

(...) ... of 'Nick'. Tiny ...
can't hide now. Prosecutor is
investigating the charity.
Someone will go down.

Yea I've seen the email, I just
really hope you get money
back from all that bull shit.

Also don't care if the town has
to pay ether, they abused
systems to go after you

There's an argument there

Donato abused systems?

I'm trying to figure out how
they got the body camera
footage delete it and how the
township file probable cause

   

     



**Sprint** 10:29 PM 60%

Nick

...to figure out how they get the body camera footage delete it and how the township file probable cause when it was a conflict since she's a Councilwoman

Not her specific, but as far as the zoning thing about the pool being dragged out, I remember we had to go to closed session about it, I told them to just stop going after you and he would stop fighting back

And they said to that?

Told me to stfu basically

It was around the time those












*Exhibit B*
*Social media content of Defendant Joseph Micucci*

GLO-L-000⌐   -19   07/15/2019 Pg 23 of 31 Trans ID: ˋV20191249375

<        Stephanie's Post        •••


Wow we used the pool store and no issues

17h   Like   Reply      👍1

**Joseph Micucci** ✋
Stephanie, I check the permits neither you or a pool company submitted a permit for a pool. Please call me so I help you with this. Please don't listen to the person who put an illegal pool up and had the police at his house practically every day growing up and knows nothing.

16h   Like   Reply      👍6


**Stephanie Leigh Kogel** ✋
**Joseph Micucci** Sent u a PM. The application has three names on it.

16h   Like   Reply


Write a reply...


**Sandy Hirn**
**Cathy Altimairo**

16h   Like   Reply

Write a comment...     

         

*Exhibit C*
*Social media content of Elizabeth Micucci*

▪▪ Sprint 🛜     **10:38 PM**     📍 ✈ ⏰ 58% 🔋

🔒 facebook.com



Regards,

Joseph Mauro,
Zoning Code Enforcement Officer



## Township United

If you are a resident of Washington Township and you are targeted by this despicable power-hungry administration of a bunch of money-hungry individuals controlled by the political godfathers, you may have already received a letter from the zoning officer. Reading the referenced ordinance, I did not read that the mayor is exempted from the violation. Keep in mind that the mayor has the ultimate decision to enforce such a ridiculous ordinance. Here you find pics of the mayor's house. After violating this same ordinance, she has the audacity to order the zoning officer to sign and send this violation to the residents. This despicable power-hungry, money-hungry political social club needs to go!

👍 Like          💬 Comment

👍😢😮 12

Sprint 📶                     **10:39 PM**                  🡕 ⏰ 58% 🔋

🔒 facebook.com

 **Giancarlo D'Orazio**
Jeff DeRusso you missed my point. How do you know the address of the targeted private citizen? I find that to be creepy.   

Like   Reply   More

 **Elizabeth Lose-Micucci**
**Jeff DeRusso** Brian McBride took the picture. He is reporting everyone with sidewalk infrastructures.   

Like   Reply   More

 **Joe Junfola**
**Elizabeth Lose-Micucci** consider being more careful with your claims and accusations.

Like   Reply   More

 **Giancarlo D'Orazio**
**Elizabeth Lose-Micucci** you are assuming that I didn't take the pic. Just like another political lapdog assumes that I did. You are missing the message. This is about a community issue, not a personal one. Unless you stay on subject, I will remove any future reply. This site is about community issues and how can we make this community better for 'all', not just for some! Thank you in advance for complying.

Like   Reply   More

Sprint 🛜          **10:39 PM**          📍 ⏰ 58% 🔋

🔒 facebook.com

 **Giancarlo D'Orazio**
Jeff DeRusso you missed my point. How do you know the address of the targeted private citizen? I find that to be creepy. 

Reply   More

 **Elizabeth Lose-Micucci**
**Jeff DeRusso** Brian McBride took the picture. He is reporting everyone with sidewalk infrastructures. 

Like   Reply   More

 **Joe Junfola**
**Elizabeth Lose-Micucci** consider being more careful with your claims and accusations.

Like   Reply   M

 **Giancarlo D'Orazio**
**Elizabeth Lose-Micucci** you are assuming that I didn't take the pic. Just like another political lapdog assumes that I did. You are missing the message. This is about a community issue, not a personal one. Unless you stay on subject, I will remove any future reply. This site is about community issues and how can we make this community better for 'all', not just for some! Thank you in advance for complying.

<           **Stephanie's Post**         •••



Wow we used the pool store and no issues

17h   Like   Reply           1



**Joseph Micucci** ✋
Stephanie, I check the permits neither you or a pool company submitted a permit for a pool. Please call me so I help you with this. Please don't listen to the person who put an illegal pool up and had the police at his house practically every day growing up and knows nothing.

16h   Like   Reply          6

 **Stephanie Leigh Kogel** ✋
**Joseph Micucci** Sent u a PM. The application has three names on it.

16h   Like   Reply

 Write a reply...

 **Sandy Hirn**
**Cathy Altimairo**

16h   Like   Reply

Write a comment...

    

**Appendix XII-B1**

| | For Use by Clerk's Office Only |
|---|---|
| **Civil Case Information Statement** **(CIS)** Use for initial Law Division Civil Part pleadings (not motions) under *Rule* 4:5-1 **Pleading will be rejected for filing, under *Rule* 1:5-6(c), if information above the black bar is not completed or attorney's signature is not affixed** | Payment type: ☐ ck ☐ cg ☐ ca |
| | Chg/Ck Number: |
| | Amount: |
| | Overpayment: |
| | Batch Number: |

| Attorney/Pro Se Name Brian F. McBride (pro se) | Telephone Number (856) 352-2995 | County of Venue Gloucester |
|---|---|---|
| Firm Name (if applicable) Kickham, Harter, & Indagroyne, | | Docket Number (when available) |
| Office Address 86 Goodwin Parkway Sewell, NJ 08080 | | Document Type |
| | | Jury Demand ■ Yes ☐ No |

| Name of Party (e.g., John Doe, Plaintiff) Brian F. McBride, Plaintiff | Caption McBride v. Township of Washington, Capehart and Scatchard, PA et al. |
|---|---|
| Case Type Number (See reverse side for listing) 0005 CIVIL RIGHTS | Is this a professional malpractice case? ☐ Yes ■ No If you have checked "Yes," see *N.J.S.A.* 2A:53A-27 and applicable case law regarding your obligation to file an affidavit of merit. |
| Related Cases Pending? ☐ Yes ■ No | If "Yes," list docket numbers L-000-677-19 |
| Do you anticipate adding any parties (arising out of same transaction or occurrence)? ■ Yes ☐ No | Name of defendant's primary insurance company (if known) ☐ None ☐ Unknown |

**The Information Provided on This Form Cannot be Introduced into Evidence.**

Case Characteristics for Purposes of Determining if Case is Appropriate for Mediation

| Do parties have a current, past or recurrent relationship? ☐ Yes ■ No | If "Yes," is that relationship: ☐ Employer/Employee ☐ Familial | ☐ Friend/Neighbor ☐ Business | ☐ Other (explain) |
|---|---|---|---|

| Does the statute governing this case provide for payment of fees by the losing party? | ☐ Yes ■ No |
|---|---|

Use this space to alert the court to any special case characteristics that may warrant individual management or accelerated disposition
This Honorable Court has seen four other cases related to political retaliation by the Township of Washington and/or elected officials thereof. There are currently two active cases alleging similar actions by the same defendants. Judge Tim Chell is the former solicitor for the Township of Washington and most likely has a conflict from presiding over this case. Please proceed accordingly.

| Do you or your client need any disability accommodations? ☐ Yes ■ No | If yes, please identify the requested accommodation: |
|---|---|
| Will an interpreter be needed? ■ Yes ☐ No | If yes, for what language? Pig Latin |

I certify that confidential personal identifiers have been redacted from documents now submitted to the court and will be redacted from all documents submitted in the future in accordance with *Rule* 1:38-7(b).

Attorney Signature:

Revised Form Promulgated by 07/01/2019 Notice to the Bar, CN 10517

page 1 of 2

SUPERIOR COURT OF NEW JERSEY
COUNTY OF GLOUCESTER
LAW DIVISON

| | |
|---|---|
| Brian F. McBride | ) |
| 86 Goodwin Parkway | ) |
| Sewell, NJ 08080 | )CIVIL ACTION |
| (312) 672-2794 | ) SUMMONS |
| | ) |
| Plaintiff *pro se* | ) |
| | ) DOCKET NO: |
| v. | ) |
| TOWNSHIP OF WASHINGTON | ) |
| CAPEHART AND SCATCHARD, PA | ) |
| | ) |
| JOSEPH J. MICUCCI | ) |
| in his individual and official capacity | ) |
| | ) |
| ELIZABETH MICUCCI | ) |
| | ) |
| CARMEN SAGINARIO | ) |
| in his individual and official capacity | ) |
| | ) |

JUL 1 5 2019
SUPERIOR COURT OF NJ
.... O. COUNT

GLOUCESTER FINANCE
Batch # 945

JUL 1 5 2019

From The State of New Jersey To The Defendant(s) Named Above:

The plaintiff, named above, has filed a lawsuit against you in the Superior Court of New Jersey. The complaint attached to this summons states the basis for this lawsuit. If you dispute this complaint, you or your attorney must file a written answer or motion and proof of service with the deputy clerk of the Superior Court in the county listed above within 35 days from the date you received this summons, not counting the date you received it. (A directory of the addresses of each deputy clerk of the Superior Court is available in the Civil Division Management Office in the county listed above and online at http://www.njcourts.gov/forms/10153_deptyclerklawref.pdf.)

If the complaint is one in foreclosure, then you must file your written answer or motion and proof of service with the Clerk of the Superior Court, Hughes Justice Complex, P.O. Box 971, Trenton, NJ 08625-0971. A filing fee payable to the Treasurer, State of New Jersey and a completed Case Information Statement (available from the deputy clerk of the Superior Court) must accompany your answer or motion when it is filed.

You must also send a copy of your answer or motion to plaintiff's attorney whose name and address appear above, or to plaintiff, if no attorney is named above. A telephone call will not protect your rights; you must file and serve a written answer or motion (with fee of $175.00 and completed Case Information Statement) if you want the court to hear your defense.
If you do not file and serve a written answer or motion within 35 days, the court may enter a judgment against you for the relief plaintiff demands, plus interest and costs of suit. If judgment is entered against you, the Sheriff may seize your money, wages or property to pay all or part of the judgment.

GLO-L-000    -19   07/15/2019  Pg 31 of 31 Trans ID   `V20191249375

If you cannot afford an attorney, you may call the Legal Services office in the county where you live or the Legal Services of New Jersey Statewide Hotline at 1-888-LSNJ-LAW (1-888-576-5529).

If you do not have an attorney and are not eligible for free legal assistance, you may obtain a referral to an attorney by calling one of the Lawyer Referral Services. A directory with contact information for local Legal Services Offices and Lawyer Referral Services is available in the Civil Division Management Office in the county listed above and online at http://www.njcourts.gov/forms/10153_deptyclerklawref.pdf.

_____          _____
Clerk of the Superior Court                      Date