## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY
## CAMDEN DIVISION

DALE M. IRVING          )
                       )
        Plaintiff,      )
vs.                     )
                       )
BOARD OF CHOSEN     )
FREEHOLDERS OF BURLINGTON   )
COUNTY, NEW JERSEY, EVAN   )
H.C. CROOK INDIVIDUALLY   )
AND OFFICIALLY AS THE   )
COUNTY ADJUSTER FOR   )
BURLINGTON COUNTY and   )
VIRTUA MEMORIAL HOSPITAL.   )
                       )
      Defendants.

**THIRD AMENDED COMPLAINT.**

1:19-CV-07276-NLH-JS

1.

This is an action for damages pursuant to 42 U.S.C. § 1983 based on a more than nineteen (19) years violation of Plaintiff's rights under the Fourth, Fifth and Fourteenth Amendments to the United States Constitution. Jurisdiction exists pursuant to 28 U.S.C. § 1331 and 1334 based on 42 U.S.C. § 1983 and questions of federal Constitutional law.

2.

Venue is proper in the District of New Jersey in that the events and conduct complained of herein all occurred in the District, and Defendant is a resident of this District..

### Preliminary Statement

3.

The rights of personal security consists in a person's legal and uninterrupted enjoyment of his life, his limbs, his body, his health and his reputation. Owing to the vast constitutional ramifications of false information

being placed on the National Instant Criminal Background Check System (NICS), the government should take the utmost caution to ensure that the information is accurate and up to date.

4.

A placement of derogatory information regarding anyone should be preceded by at the very least a thorough investigation to ensure that false and malicious information is not being placed on the records of innocent persons. This is true when the vast constitutional deprivations which may occur based on false and malicious information is considered.

5.

State Agencies and their employees should be trained in such a manner to ensure that false and malicious information is not placed on an innocent person's file not only because of the constitutional ramifications but, also because such false and malicious information has financial implications for the innocent person. These include but are not limited to employment denials, promotion denials and even the denial of other Constitutional rights.

**The Parties.**

6.

Plaintiff Dale M. Irving (Plaintiff) is a resident of Gwinnett County, Georgia which is encompassed by the Northern District of Georgia. Service can be perfected on Plaintiff at 939 Creek Cove Way, Loganville, Georgia 30052.

7.

The Board of Chosen Freeholders of Burlington County, New Jersey (The County) is a political and administrative division of the state of New

Jersey and provide local government services to the resident therein. Service can be perfected on Burlington County at 49 Rancocas Road, Mount Holly, New Jersey 08060.

8.

Evan H.C. Crook (Mr. Crook) the County Adjuster and Solicitor for Burlington County is sued in his official and individual capacity. Burlington County's Adjuster is  the county official charged with the responsibility for determining the psychiatric client's financial ability to pay psychiatric agency and/or the county psychiatric facility for the cost of care and maintenance. The individual is also responsible for filing a petition with the court to determine the client's legal settlement and provision for payment of the client's expense for care and treatment. This petition shall be accompanied by a report stating the results of the county adjuster's investigation and recommendations on this matter, as required by R. 4:74-7(i). Service can be perfected on Mr. Crook at 457 Haddonfield Road, Suite 500, Cherry Hill, New Jersey, 08002.

**Summary of Facts**

9.

Plaintiff resided in The County for a period between June 1999 and July 2003. In July of 2003 Plaintiff moved to Gwinnett County, Georgia and has been a resident there ever since.

10.

During the preceding 16 years Plaintiff has had no contact with the state of New Jersey, has not visited the state and only drove through the state on his way to New York. None of these movement through the state

Page 3 of 15

necessitated any contact with any official from the state and/or The County.

11.

In March of 2012, Plaintiff applied for and was granted a weapons carry license by the state of Georgia through the Gwinnett County Probate Court. Plaintiff was able to use his weapon on assignments for the next five years.

12.

In August of 2017, Plaintiff applied to have his weapons carry license renewed. Plaintiff was a parking enforcement agent for private property owners in the city of Atlanta which necessitated carrying his weapon for his protection.

13.

Plaintiff's weapons carry license was denied because The County had placed with the NICS a derogatory record that Plaintiff had been committed by a court in The County for a mental defect. This was, is and continues to be a false statement.

14.

Based upon information, on September 17, 2000 Plaintiff and his then wife, Elaine Summers, had an argument at approximately 4:00 am in the morning. At approximately 6:00pm that evening Plaintiff was arrested without incident by the Pemberton Township Police Department (PTPD). PTPD transported Plaintiff directly to Virtua Memorial Hospital (Virtua) without any reason being given.

15.

While at Virtua Plaintiff was beaten, physically and chemically

restrained and transported to Buttonwood Hospital, a locked psychiatric facility. The Psychiatrist who signed the screening certificate permitting Plaintiff's transfer to the locked facility had not spoken to Plaintiff once, nor any member of Plaintiff's family before signing the screening certificate. Instead, the screening certificate was signed to coverup the beating, physical restraint, chemical restraint and drawing of Plaintiff's blood against his wishes. Further, Plaintiff's file did not contain a police report indicating any behavior necessitating a mental health screening; Plaintiff's file did not contain a judicial order mandating a mental health screening; and Plaintiff's file did not contain a certification of a mental health screener who had observed behavior necessitating a mental health screening before arriving at Virtua Memorial Hospital.

16.

Evan H. C. Crook was the County Adjuster for The County at the time of this incident. In an effort to protect Defendant Virtua from the legal repercussions associated with its conduct, Mr. Crook perpetuated the myth that Plaintiff was committed. This, notwithstanding his office being informed on September 21, 2000 that Plaintiff had been discharged from Button Wood Hospital, and his duty pursuant to New Jersey Administrative Codes to review Plaintiff's file for accuracy and completeness. This ministerial review would have promptly informed Mr. Crook there was only one screening certificate in Plaintiff's file and the psychiatrist who signed the certificate had not spoken to Plaintiff, or any member of Plaintiff's family, and there was no document requesting a screening before Plaintiff was brought to Virtua Memorial Hospital.

Page 5 of 15

17.

Evan H. C. Crook then using the cloak of his official capacity as the
County Adjuster caused Plaintiff's information to be entered into the
County's local computer system as one who had been committed or
adjudicated mentally incompetent. This was done in further effort to cover
for Virtua's beating, physical restraint, chemical restraint and withdrawal of
Plaintiff's blood without consent.

18.

Mr. Crook's continued participation in this coverup of unlawful
activity by Virtua included, gathering evidence on behalf of Virtua to ensure
Plaintiff was denied any legal relief for the unlawful activity of Virtua.

19.

Placing Plaintiff's information on Burlington County's local computer
system ensured it would be placed on the Civil Commitment Automated
Tracking System (CCATS). This information was automatically sent to the
New Jersey State Police to be placed on the NICS.

20.

Defendant Board of Chosen Freeholders of Burlington County (The
County) had no policies or procedures in place to protect the information of
the innocent, failed to supervise its Adjuster to prevent unlawful conduct, and
failed to supervise its Adjuster to ensure he acted within the scope of the New
Jersey Administrative Codes. Further, The County failed in its duty to train
its adjuster, given the vast constitutional ramifications of placing false
information on NICS regarding an innocent person. The Need for this
training was openly obvious as false mental health information had the ability

to deny a citizen his rights under the Second Amendment of the US Constitution, deny a citizen employment opportunities, deny a citizen promotions, and even the authority for a citizen to conduct his own affairs.

21.

Cloaked in the authority of New Jersey's Commitment statutes, and the police powers of the state, The County violated Plaintiff's civil rights by allowing Plaintiff's name to be placed on NICS without a fair and impartial investigation, a fair and impartial trial, unlawfully seizing Plaintiff's reputational property rights and Plaintiff's right to keep and bear arms.

22.

Defendant's conduct inflicted emotional distress on Plaintiff. This emotional distress has had a severe physical impact on Plaintiff. This physical impact has caused physical injuries which will impact Plaintiff's life permanently.

23.

As Defendant Crook's actions were intentional, wanton and reckless Plaintiff is entitled to punitive damages in an amount to be determined by the enlightened conscience of a fair and impartial juries against this Defendant in his individual capacity.

## COUNT ONE
### Violation of Fourteenth Amendment
### Due Process Right to a fair and Impartial Investigation

24.

Plaintiff incorporates by reference paragraphs 1 through 23 as if fully restated here and further states the following.

25.

Had Plaintiff been committed to a mental institution for a mental defect by a competent court, there would exist a Court Order/a second screening certificate memorializing this commitment. Burlington County failed to conduct even a cursory investigation to determine if such a Court Order existed.

26.

Without the proper training, or supervision a temporary employee was allowed to place false and malicious information on CCATS regarding Plaintiff, no investigation was done, violating Plaintiff's procedural due process rights to some minimal process before the government acting under state law places his constitutional rights at risk.

27.

Burlington County's total failure to afford Plaintiff at the very least a cursory investigation to determine whether a competent court had committed Plaintiff, was a violation of Plaintiff's right to procedural due process as guaranteed by the Fourteenth Amendment to the United States Constitution.

## COUNT TWO

### Violation of Fourteenth Amendment

### Due Process Right to A Fair and Impartial Trial

28.

Plaintiff incorporates by reference paragraphs 1 through 27 as if full stated here and further states the following.

29.

With full knowledge that false and malicious information on the NICS

could lead to false arrests, false imprisonment, unlawful detentions, denial of Second Amendment rights, denial of the right to administer one affairs among other things, Burlington County allowed a temporary employee to place false information on CCATS regarding Plaintiff.

30.

This was done without affording Plaintiff notice and an opportunity to be heard, ten years after Plaintiff had, had any contact with the state of New Jersey and/or The County. This total denial of notice and the opportunity to be heard denied Plaintiff a fair and impartial trial.

31.

By totally denying Plaintiff notice and an opportunity to be heard, Burlington County acting under color of state law denied Plaintiff's substantial due process rights to a fair and impartial trial.

## COUNT THREE

### Violation of Fourth Amendment

### Due Process Right to be Free From Unlawful Seizure

32.

Plaintiff incorporates by reference paragraphs 1 through 31 as if full stated here and further states the following.

33.

Plaintiff has a liberty interest in his reputation as such, when the government infringes this right to Plaintiff's reputation, Plaintiff is entitled to a modicum of due process. This is even more necessary when it is considered that Plaintiff had, had no contact with the state of New Jersey for ten (10) years when this false information was placed on CCATS regarding Plaintiff.

34.

By libeling Plaintiff, Burlington County essentially seized Plaintiff's reputation without due process. This was done acting under color of state law to provide mental health records to the NICS to prevent individuals with mental illness from owning, and/or possessing a fire arm.

36.

Placing false information on CCATS regarding Plaintiff is the same as swearing falsely on a warrant to effect the arrest of a person, as such The County knew what it was doing violated Plaintiff's Constitutional rights.

37.

The County infringed on Plaintiff's liberty interest in his reputation without due process, as is guaranteed by the Fourth Amendment to the United States Constitution.

## COUNT FOUR

### Violation of Second Amendment
### Right to Keep and Bear Arms

38.

Plaintiff incorporates by reference paragraphs 1 through 37 as if fully stated here and further states the following.

39.

The County acting under color of state law intended to and did infringe on Plaintiff's right to keep and bear arms. As Burlington County published this false defamatory statement regarding Plaintiff nationwide, it allowed anyone who accessed the NICS to deny Plaintiff his Second Amendment

right.

40.

When the Gwinnett County probate court conducted a background check on Plaintiff and found this false information, Plaintiff was denied a weapons carry license. This denial placed Plaintiff's life at risk.

41.

Burlington County acted arbitrarily and capriciously by placing false information on Plaintiff's NICS file, denying Plaintiff the right to keep and bear arms as guaranteed by the Second Amendment to the United States Constitution.

## COUNT FIVE

### State Law Claim for the Tort of Libel against
### the County Adjuster in his Individual capacity.

42.

Plaintiff incorporates by reference paragraphs 1 through 41 as if fully stated here and further states the following.

43.

The County Adjuster, Mr. Crook, is tasked with investigating commitments to ensure they meet statutory and constitutional standards, to receive and review commitment records to ensure they meet statutory and constitutional standards, and to secure these records in a manner consistent with statutory and constitutional standards.

44.

Mr. Crook in a reckless disregard for his duties, failed to review Plaintiff's records, published or caused to be published falsely on the NICS

that Plaintiff had been adjudicated or committed for a mental defect.

45.

This publication of false information libeled Plaintiff nationwide as this information was available to any law enforcement official, government official, employers or anyone who could pay to conduct a background check on Plaintiff.

46.

This unlawful conduct caused Plaintiff damages in an amount to be proven at trial.

## COUNT SIX

### Claim for Punitive Damages against
### the County Adjuster in his personal capacity and Virtua
### Memorial Hospital of Burlington County.

47.

Plaintiff incorporates by reference paragraphs 1 through 46 as if fully stated here and further states the following.

48.

Notwithstanding statutory duty to investigate, the County Adjuster, Mr. Crook recklessly disregarded his duty to Plaintiff, acted with a conscious disregard for the consequences of his action when he published falsely that Plaintiff had been adjudicated or committed for a mental defect nationally. Further, Mr. Crook acted in concert with Virtua Memorial Hospital of Burlington County in an effort to protect them from liability.

49.

The County Adjuster and Virtua Memorial Hospital acted with the

requisite culpability so as to require punitive damages against him in his individual capacity and against Virtua in its corporate capacity.

## COUNT SEVEN

### Civil Conspiracy Between The County Defendants
### And Virtua Memorial Hospital of Burlington County

50.

Plaintiff incorporates by reference paragraphs 1 through 49 as if fully stated here and further states the following.

51.

On or about September 21, 2000 Defendants Board of Chosen Freeholders of Burlington County, New Jersey were informed by Buttonwood Hospital that Plaintiff had not been committed. Knowing that Plaintiff's rights were violated at Virtua Memorial Hospital a decision was made to enter Plaintiff in the local computer system as being committed. This was done to protect Defendant Virtua Memorial Hospital from legal liability for violating Plaintiff's rights.

52.

Having placed Plaintiff on the local computer system, the temporary data entry workers had no option other than placing Plaintiff on the Civil Commitment Automated Tracking System.(CCATS) CCATS was meant to be used by the New Jersey State Police as the system from which information was directly transferred to the National Instant Criminal Background Check System. Thus as a direct result of this conspiracy to unlawfully place Plaintiff's name on the local computer system, Plaintiff's civil rights were once again violated.

53.

Plaintiff suffered mental and emotional anguish, Plaintiff's life was placed in danger, the physical impact of the mental anguish has created physical health problems which will need treatment for the rest of Plaintiff's life and may have shortened Plaintiff's life. Plaintiff is entitled to damages including punitive damages.

WHEREFORE Plaintiff prays for:

I.     A trial by Jury;

II.     Judgment against Board of Chosen Freeholders of Burlington County New Jersey;

III.     General and Compensatory damages against all Defendants;

IV.     For Punitive Damages against Evan H.C. Crook in his individual capacity and Virtua Memorial Hospital; and

V.     For any other relief this court deems just and appropriate.

Respectfully Submitted this 11 day of May, 2020.

By : _Dale M. Irving_

Dale M. Irving

939 Creek Cove Way

Loganville, GA 30052

Page 14 of 15

404-219-5080

Consolid354@yahoo.com